UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES CHOATE, | ) |
| Plaintiff, | ) |
| | ) 3　09　0441 |
| v. | ) No. 3:09mc0068 |
| | ) Judge Echols |
| TDOC, ET AL., | ) |
| Defendants. | ) |

## MEMORANDUM

### I. INTRODUCTION AND BACKGROUND

The plaintiff is a prisoner in the Whiteville Correctional Facility in Whiteville, Tennessee. Proceeding *in forma pauperis*, the plaintiff brings this *pro se* action under 42 U.S.C. § 1983 against the following defendants: 1) the Tennessee Department of Correction (TDOC); 2) George Little, Commissioner of TDOC; 3) Ruben Hodge, Assistant Commissioner of Operations for TDOC; 4) Robert Waller, Warden at the Lois M. DeBerry Special Needs Facility (DeBerry); 5) Dr. f/n/u McNeil, TDOC physician at DeBerry; 6) Dr. Lester Lewis, Deputy Director of Clinical Services at DeBerry; and 7) and Gil Mathis, Deputy Warden at DeBerry. The plaintiff is suing TDOC in its official capacity, and the remainder of the defendants in both their individual and official capacities. The plaintiff seeks money damages and injunctive relief, alleging that the defendants violated his rights under the Eighth Amendment.

The plaintiff was at DeBerry in June, 2008, having been transferred there temporarily from the West Tennessee State Penitentiary (WTSP) for medical treatment unrelated to the alleged events that gave rise to this action. (Docket Entry No. 1, ¶ 14). On the last day that he was at DeBerry, the plaintiff "accidently stuck his finger in his eye and injured his eye with his fingernail." (Docket

Entry No. 1, ¶ 15). The plaintiff asserts that Dr. McNeil would not treat his eye injury, alleging further that Dr. McNeil told him that "he was not [at DeBerry] for his [eye] injury and that they could not help him."[1] (Docket Entry No. 16)

According to the plaintiff, "after ... he was already shackled and handcuffed" for the trip back to WTSP, "eye drops were stuck down [his] pocket." (Docket Entry No. 1, ¶ 17). The plaintiff asserts that he was then driven 7 hours to WTSP, arriving there at 6:00 p.m. (Docket Entry No. 1, ¶ 18) The plaintiff claims that, during the time he was in transit, neither he nor the other inmates could put the eye drops in his eye because they were shackled, and the officers on the bus "refused . . because they were 'too busy.'" (Docket Entry No. 1, ¶¶ 17-18)

The plaintiff claims that, "upon reaching West Tennessee State Prison, [he] was transported to Ripley Hospital," where he was told that he had "blood poisoning in his eye," but that there was no one there who could help him. (Docket Entry No. 1, ¶ 19) The plaintiff asserts that he was then taken to the "General Hospital in Nashville," where he arrived between 1:00 and 2:00 a.m., too early to receive immediate treatment. (Docket Entry No. 1, ¶ 20).

According to the plaintiff, he was later transported to Vanderbilt Hospital where doctors "took [his] eye out . . . shot [it] up with antibiotics, and put [it] back in to see if the antibiotics would do any good." (Docket Entry No. 1, ¶¶ 21-23) The plaintiff asserts that his eye was "still infected and swollen" the next morning, and that the doctors at the Vanderbilt Hospital determined that his "eye needed to be removed permanently." (Docket Entry No. 1, ¶ 24). He was transported back to

---

[1] The plaintiff has attached a copy of the grievance that he filed in this matter, and the endorsements related thereto. Because the plaintiff has submitted these documents with his complaint, and because he relies on these documents in the body of his complaint, the Court concludes that the information in these documents is true. The documents establish that the plaintiff injured his eye on June 12, 2008, that his eye was "examined while [he was] in transit" from DeBerry back to WTSP, that he was provided medicated eye drops with antibiotics subsequent to being examined, and that he was told to "sign up for sick call" at WTSP. (Docket Entry No. 1, Attached Grievance)

2

the General Hospital in Nashville where surgery was performed to remove his eye [2] ((Docket Entry No 1, ¶ 25)

## II. ANALYSIS

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Under the Prison Litigation Reform Act (PLRA), the courts are required to dismiss a prisoner's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). Although the courts are required to construe *pro se* complaints liberally, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, the "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).

To establish a violation of his constitutional rights resulting from a denial of adequate medical care, the plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm;

---

[2] In his complaint, the plaintiff asserts that his eye was removed "in the first week of July 2008." (Docket Entry No 1, ¶ 25) The plaintiff's grievance shows that the plaintiff's eye actually was removed on June 27, 2008. The Court liberally construes the latter date to be the correct one because for reasons that will become apparent, the earlier date is more advantageous to him.

3

mere negligence, or even gross negligence, will not suffice. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(*en banc*); *Westlake v. Lucas*, 537 F.2d 857, 860-61 n. 5 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 105-06.

An Eighth Amendment claim of denial of medical care claim has both an objective and subjective component. The objective component requires that the plaintiff's medical needs were sufficiently serious. *See Rhodes v. Chapman*, 452 U.S. 337 (1981); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The subjective component requires that the defendants were deliberately indifferent to the plaintiff's serious medical needs. *See Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt*, 974 F.2d at 735.

Complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107. Moreover, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n. 5. Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 401 (6th Cir. 1999).

### A. TDOC, Commissioner Little, Assistant Commissioner Hodge, Warden Waller, Dr. Lewis, Deputy Warden Mathis

The plaintiff specifies that his legal theory against the above-named defendants is that they are liable to him under the doctrine of *respondeat superior*. (Docket Entry No. 1, §§ A-D, F-G) The plaintiff's actual allegations against the above-named defendants are summarized below:

4

1. TDOC – failure to train and monitor its employees adequately, and failure to make rules, regulations, and policies that properly instruct TDOC employees at DeBerry regarding what to do in emergencies.

2. Commissioner Little – failure to monitor TDOC employees adequately, and failure to make rules, regulations, and policies that properly instruct TDOC employees at DeBerry regarding what to do in emergencies

3. Assistant Commissioner Hodge – failure to monitor TDOC employees adequately, and failure to make rules, regulations, and policies that properly instruct TDOC employees at DeBerry regarding what to do in emergencies

4. Warden Waller – failure to monitor TDOC employees adequately, and failure to make rules, regulations, and policies that properly instruct TDOC employees at DeBerry regarding what to do in emergencies.

5. Dr Lewis – failure to monitor TDOC employees adequately, and failure to make rules, regulations, and policies that properly instruct TDOC employees at DeBerry regarding what to do in emergencies.

6. Warden Mathis – failure to monitor TDOC employees adequately, and failure to make rules, regulations, and policies that properly instruct TDOC employees at DeBerry regarding what to do in emergencies.

(Docket Entry No. 1, §§ A-D, F-G).

The law is settled that actions brought against state actors cannot be maintained on a theory of *respondeat superior, see e g , Monell v Dept. of Social Serv's of The City of New York, et al.*, 436 U S 658, 659, 691-95 (1978); *Taylor v Michigan Dep't of Corrections*, 69 F 3d 76, 80-81 (6th Cir. 1995); *Dunn v. Tennessee*, 697 F 2d 121, 128 (6th Cir 1982), unless the defendants were personally involved in the alleged violations of the plaintiff's constitutional rights, *see e.g., Copeland v. Machulis*, 57 F 3d 476, 481 (6th Cir 1995); *Bellamy v Bradley*, 729 F 2d 416, 421 (6th Cir. 1984) For vicarious liability to attach here, the above-named defendants must have "encouraged

5

directly participated . . authorized, approved, or knowingly acquiesced . . . ." in the violations alleged. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The foregoing also pertains to lawsuits that attempt to impute liability to supervisory personnel. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).

In addition to the conditions/restrictions described above, where a state actor's role is limited to the denial of administrative grievances, or the failure to act with respect to such grievances, such state actors are not liable under § 1983 on the theory that their actions constituted an acquiescence with respect to the alleged unconstitutional conduct.[3] *See Shehee*, 199 F.3d at 300. More particularly, a "combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." *Miller v. Bock*, No. 02-1964, 2003 WestLaw 202173 at *2 (6th Cir. (Mich.))(citing *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989)).

The plaintiff does not allege, nor can it be liberally construed from the complaint, that the above-named defendants were directly responsible for any of the alleged events that gave rise to this action. Neither does he allege that they acted pursuant to a policy or custom that violated his constitutional rights. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). On the contrary, as established *supra*, the plaintiff claims only that the above named defendants failed to monitor TDOC employees, and to establish rules, regulations, and policies that instructed TDOC employees at DeBerry regarding what to do in medical emergencies. Finally, liability does not attach merely because some of the above-

---

[3] The plaintiff exhausted his administrative remedies pertaining to this matter. (Docket Entry No. 1, ¶¶ 26-35 & Attached Grievance) Doctor Lewis, Assistant Warden Mathis, Warden Waller, and Assistant Commissioner Hodge participated in the grievance review process.

6

named defendants were involved in the grievance process related to the plaintiff's claim. For all of these reasons, the above-named defendants are not liable to the plaintiff under the doctrine of *respondeat superior*.

### B. Dr. McNeil

The plaintiff alleges that "Dr. McNeil is responsible for the Plaintiff's injuries ... due to his gross negligence and his medical malpractice, and for his intentional failure to treat the Plaintiff's serious medical needs ..." (Docket Entry No. 1, § E)

The following facts relevant to the plaintiff's claim against Dr. McNeil are apparent from the complaint and attached documents: 1) the plaintiff had been transferred temporarily from WTSP to DeBerry for medical reasons other than those that gave rise to this action; 2) the plaintiff had completed his course of treatment at DeBerry, and was awaiting transport back to WTSP the day that he accidentally stuck his finger in his eye; 3) Dr. McNeil examined the plaintiff's eye, but declined to treat it at DeBerry; 5) instead, Dr. McNeil gave the plaintiff medicated eyed drops with an antibiotic, and told the plaintiff to go to sick call when he returned to WTSP; 6) neither the plaintiff nor his fellow prisoners were able to put drops in the plaintiff's eye while they were en route to WTSP, because they were shackled; 7) the officers on the bus from DeBerry to WTSP "refused" to put the eye drops in the plaintiff's eye; 8) the plaintiff arrived at the WTSP at 6:00 p.m., approximately seven (7) hours after he departed DeBerry; 9) given the approximate time en route, and the time of arrival at WTSP, the plaintiff left DeBerry at approximately 11:00 a.m.; 10) given that the plaintiff left DeBerry at approximately 11:00 a.m., the plaintiff injured his eye within a matter of a few hours prior to his transfer; 11) the medical staff at WTSP sent the plaintiff to the Ripley Hospital "upon reaching" WTSP; 12) inasmuch as the plaintiff was sent to the Ripley Hospital "upon reaching" WTSP, the plaintiff was seen by the WTSP medical staff within a matter

7

of hours after leaving DeBerry; 13) the plaintiff's eye was surgically removed on June 27, 2008; 14) the surgery to remove the plaintiff's eye occurred more than two (2) weeks after he injured it.

It may be inferred from the fact that the plaintiff lost his eye that his health suffered. Therefore, the plaintiff has satisfied the requirement under *Thaddeus-X*, *supra* at p. 4. As explained below, however, the plaintiff has failed to establish that Dr. McNeil's alleged actions violated the plaintiff's rights under the Eighth Amendment.

First, although the plaintiff asserts that his eye injury was "serious," he provides no facts that would support the inference that his eye injury was, in fact, "serious" at the time Dr. McNeil examined him, rather than an injury that became serious over time. Neither can such an inference be drawn from the fact that the plaintiff eventually lost his eye, given that his eye was removed more than two (2) weeks after Dr. McNeil examined him.[4] The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990). The plaintiff has failed to satisfy the objective half of the two-part test for deliberate indifference.

Second, although the plaintiff alleges that Dr. McNeil's actions were "intentional," the only factual allegation in the complaint attributable to Dr. McNeil is that he told the plaintiff that he was not at DeBerry to be treated for his eye injury, and that DeBerry could not help him. (Docket Entry No. 1, ¶ 16, § E) Taking as true the plaintiff's claim that Dr. McNeil's actions were "intentional," Dr. McNeil's statement merely reflects the plaintiff's factual circumstances at the time – he was awaiting transportation back to WTSP, the medical condition for which he had been transferred to

---

[4] Working backward from the date that the plaintiff's eye was removed on June 27, 2008, the facts in the compliant show that the plaintiff was not transported WTSP back to the General Hospital in Nashville until June 24, 2008 – nearly two (2) weeks after Dr. McNeil examined him at DeBerry, having been advised at Ripley Hospital that no one there could help him. (Docket Entry No. 1, ¶¶ 20-24)

8

DeBerry having been addressed. Without more than this single alleged statement, the plaintiff fails to establish that Dr. McNeil acted with the state of mind necessary to establish the subjective half of the two-part deliberate indifference test.

Third, it is clear that the plaintiff received some medical care. Doctor McNeil examined the plaintiff's eye, gave him medicated eye drops with antibiotics, and instructed him to see the medical staff at WTSP. As previously established, *supra* at p. 4, when, as here, a prisoner receives some medical attention, but disputes the adequacy of the diagnosis and/or treatment, the federal courts will not second-guess the medical judgments of prison officials.

Finally, the plaintiff has set forth – at most – a claim of negligence and/or malpractice against Dr. McNeil. Indeed, the plaintiff alleges as much. However, as previously established, *supra* at p. 4, neither negligence nor malpractice entitle the plaintiff to relief.

### III. CONCLUSION

For the reasons explained herein, the complaint will be dismissed for failure to state a claim on which relief may be granted. Dismissal of this action shall be without prejudice to any claims that the plaintiff may have in state court.

An appropriate order will enter.

Robert L. Echols
United States District Judge